# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL DESHAN LESLIE, | 1:06-CV-1031 JMD HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| SCOTT KERNAN, Warden, | |
| Respondent. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Fresno County Superior Court. On January 23, 2004, a jury convicted Petitioner of second degree murder (Cal. Penal Code § 187), assault with a firearm (Cal. Penal Code § 245(a)(2)), and being a felon in possession of a firearm (Cal. Penal Code § 12021(a)). The jury also found that Petitioner personally and intentionally discharged a firearm causing death or great bodily injury in connection with the murder and assault with a firearm (Cal. Penal Code § 12022.53). On February 24, 2004, the court sentenced Petitioner to a term of fifteen years to life for the second degree murder plus twenty-five years to life for its firearm enhancement, a consecutive term of four

years for the assault with a firearm plus ten years for its firearm enhancement, and a concurrent term of three years for the felon-in-possession charge. (Answer at 1-5.)

Petitioner appealed to the California Court of Appeal. On June 8, 2005, the court affirmed the judgment. (Lodged Docs. 1-2.)

Petitioner then appealed to the California Supreme Court. On September 28, 2005, the court summarily denied review. (Lodged Docs. 3-4.)

On July 26, 2006, Petitioner filed the instant petition in this Court. The petition raises the following five grounds for relief: 1) California's judicially-created crime of second degree felony murder eliminates the statutory element of malice, thereby violating due process and Petitioner's right to a jury trial; 2) the trial court's failure to submit to the jury the issue of whether Petitioner had a collateral purpose in committing the predicate offense to felony murder violated due process and his right to a jury trial; 3) sentencing Petitioner to upper terms based on aggravating factors not found by the jury beyond a reasonable doubt violated due process and his right to a jury trial; 4) exclusion of evidence showing victim's prior violent acts violated due process and rights to confront witnesses and present a defense; and 5) jury instructions limiting Petitioner's right to act in defense of another violated due process and rights to confront witnesses and present a defense.

On April 27, 2007, Respondent filed an answer to the petition.

On May 21, 2007, Petitioner filed a traverse to the answer.

**FACTUAL BACKGROUND**[1]

On March 6, 2003, Petitioner became embroiled in a domestic altercation during a visitation exchange of two children. Petitioner and his sister, Joeisha, were aligned against John, Deprena, and Shirley. Deprena and Shirley got the children into John's car and attempted to leave. Deprena was driving, Shirley was sitting in the front passenger seat, and the children were in the back seat. The argument between Petitioner and Deprena escalated. Petitioner pushed Deprena after she tried to kick him. Petitioner said to her, "Bitch, get your ass back in the car before I hurt you because you know I ain't John and I ain't fixing to play with you. Get back in the car." After John told Deprena

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of June 8, 2005 and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 2.

to start the car, she backed out of the driveway.  John wrestled Petitioner to the ground to stop him from chasing after the car, but Petitioner broke free and headed toward the car.  Joeisha followed after the car, attempting to open a rear passenger car and remove the children.  When Petitioner reached the front of the car, he pulled out a gun that was in his waistband and fired at the driver's side of the windshield.  Then he ran around to the passenger side and fired into the front passenger window.  This shot hit Deprena in the head, killing her.  Petitioner fled.  A neighbor heard him yell, "She shouldn't have fucked with me."  Petitioner testified he fired into the car because he thought Joeisha was in danger of being run over and he wanted to make the vehicle stop.

## DISCUSSION

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

### II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state

court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Ground One**

Petitioner argues that California's judicially-created crime of second degree felony murder eliminates the statutory element of malice, thereby violating due process and his right to a jury trial.

This claim was generally raised in an appeal to the California Court of Appeal, which affirmed the judgment on June 8, 2005. (Lodged Doc. 1 at 27-36, 45-48; Lodged Doc. 2.) The issue was then explicitly raised in an appeal to the California Supreme Court, which summarily denied review. (Lodged Docs. 3-4.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Court of Appeal did not clearly and separately address this claim in affirming the judgment, although it did recognize that the California Supreme Court had found that malice was not an element of second degree felony murder. The Court of Appeal then stated that Petitioner would have to raise his "complaint about the perceived unfairness of application of the felony murder rule to him" in another forum as it was bound by the California Supreme Court's decisions. (Lodged Doc. 2 at 11-12.)

"The requirement that the prosecution establish beyond a reasonable doubt every element

necessary to constitute the crime with which the defendant has been charged is a fundamental principle of due process." Northrop v. Alexander, 642 F.Supp. 324, 326 (N.D. Cal. 1986). "However, the due process clause requires only that the state prove the existing elements of a crime, not that particular elements be present." Hughes v. Borg, 699 F.Supp. 779, 786 (N.D. Cal. 1988). In California, "[t]he felony-murder rule eliminates the need for proof of malice in connection with a charge of murder, thereby rendering irrelevant the presence or absence of actual malice, both with regard to first degree felony murder and second degree felony murder." People v. Robertson, 34 Cal.4th 156, 165 (2004).

Here, Petitioner has not shown that the prosecution failed to prove every element of second degree felony murder, as the California Supreme Court has explicitly stated that malice is not an element of the offense. California is not required to define the offense in a particular way. Further, this Court is bound by the California Supreme Court's construction of state law absent circumstances not present here. Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (stating that federal courts are bound by a state court's construction of state law unless it appears to be an obvious subterfuge to evade consideration of a federal issue).

**B.  Ground Two**

Petitioner argues that the trial court's failure to submit to the jury the issue of whether he had a collateral purpose in committing the predicate offense to felony murder violated due process and his right to a jury trial.

This claim was generally raised in an appeal to the California Court of Appeal, which affirmed the judgment on June 8, 2005. (Lodged Doc. 1 at 37-45; Lodged Doc. 2.) The issue was then explicitly raised in an appeal to the California Supreme Court, which summarily denied review. (Lodged Docs. 3-4.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner's own testimony demonstrated that his purpose in firing the gun into the car was to stop the car from hitting his sister, not to injure or kill the occupants. The court therefore found that the collateral purpose requirement

1  of the felony murder rule was met and that the homicide did not merge into the predicate felony.

2  (Lodged Doc. 2 at 9-10.)

3      The "use of the second degree felony-murder rule is appropriate when the purpose of the

4  predicate felony was independent of or collateral to an intent to cause injury that would result in

5  death." People v. Robertson, 34 Cal.4th 156, 171 (2004).  While recognizing that the collateral

6  purpose rationale has some drawbacks, the California Supreme Court has stated that "it provides the

7  most appropriate framework to determine whether, under the facts of [a] case, the trial court properly

8  instructed the jury."  (Id.)

9      In this case, Petitioner testified on direct examination as follows:

10 [Mr. Kinney]: What did you feel about the situation, watching your sister with Deprena, with what you just said?

11

12 [Petitioner]: In my eyes, from what I seen, I felt my sister was in danger because I thought she was going to get ranned (sic) over.

13 Q: And once you saw that, what did you do?

14 A: I fired.

15 Q: You fired the gun, didn't you?

16 A: Yeah.

17 Q: How many times did you fire the gun that night?

18 A: Twice.

19 Q: And, where did the first shot go?

20 A: Uhm, I think it was the front windshield or something like that.

21 . . .

22 Q: Who were you shooting at?

23 A: I was just trying to stop her from – don't hurt my sister.

24 Q: When you say her, who are you referring to?

25 A: Ms. Velyines.

26 Q: Were you trying to shoot at Shirley?

27 A: No.  I never was going to shoot at Shirley, nor was I trying to.  I felt that my sister was going to get ranned (sic) over by this car, because this woman, I don't know, for

28 some reason, is acting crazy, or I don't know if she on something.  I don't' really – I don't know this person.  I'm trying to protect my sister.

> . . .
>
> Q: Now, when you shot that first shot you just told us about, what happened next?
>
> A: After the first shot?
>
> Q: That's right.
>
> A: The car was still coming. It was like it didn't phase – phase her or nothing. I didn't know if I hit nobody. I was just trying to stop it from running my sister over, basically.

(RT 860-62.) On cross-examination, Petitioner testified as follows:

> [Mr. Gunderson]: Okay. So you have no idea what you're going to hit when you fired that gun, isn't that true?
>
> [Petitioner]: Not actually, but I knew I was trying to stop a person that was trying to put my family life in danger, so I would say I was not really aiming towards her but I was trying to stop this person. I don't know if – say if that was marksmanship or whatever. I knew I was trying to stop some person from trying to hit my sister.

(RT at 888.)

> Q: Okay. Well, before that happened, the time you fired the second shot, what was Ms. Poindexter doing?
>
> A: She was in the car. She was right there in the passenger seat. Like I say, she had to have had ducked or got out of the way or something.
>
> Q: Because otherwise you would have hit her?
>
> A: Uhm, I can't say that – I wasn't trying to hit her. I can't say – I don't really know. All I know is I was trying to stop this person from hurting my sister, that's all I was trying to do. I wasn't trying to shoot Ms. Poindexter. I wasn't trying to kill her, let alone try to kill the victim. It was just something that happened. A bad thing happened. I was trying to stop her from hurting one of my family members. That's all I'm trying to do is protect my sister.

(RT at 893-94.)

Petitioner has not shown that his rights were violated when the trial court instructed on felony murder without submitting the issue of whether he possessed a collateral purpose to the jury. The existence of a collateral purpose is not an element of the offense of second degree felony murder that must be found by a jury to convict a defendant. *See* CALJIC 8.32. Instead, the collateral purpose requirement is a framework used by courts to determine, as a matter of policy, whether a predicate felony merges into the crime of murder in a given case. *See* Use Note to CALJIC 8.32 ("A second degree felony-murder instruction is appropriate when the dangerous felony (Penal Code § 246) does not merge into the crime of murder. A dangerous felony does not merge into murder if it does not

elevate all felonious assaults to murder or otherwise subvert the legislative intent."); see also People v. Garrison, 47 Cal.3d 746, 781 (1989) (stating that it is the court's duty to instruct on the principles of law relevant to the issues raised by the evidence).

### C. Ground Three

Petitioner argues that his due process rights and right to a jury trial were violated when the trial court sentenced him to upper terms based on aggravating factors not found by the jury beyond a reasonable doubt. Petitioner argues that the aggravating factors used do not fall into any exception to the general rule because they "were not exclusively based on the mere fact of a prior conviction."

This claim was raised in an appeal to the California Court of Appeal, which affirmed the judgment on June 8, 2005. (Lodged Docs. 1-2.) The issue was then raised in an appeal to the California Supreme Court, which summarily denied review. (Lodged Docs. 3-4.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that the imposition of an upper term is permissible, whether based on recidivist or offense-related factors, because the upper term is the statutory maximum under *Blakely*. The court further explained that courts have traditionally been authorized to make discretionary sentencing decisions within a statutory range. (Lodged Doc. 2 at 14.).

Initially, Respondent argues that Petitioner is not entitled to habeas relief on this claim because granting such relief would violate the retroactivity rule set forth in *Teague v. Lane*, 489 U.S. 288 (1989). The Ninth Circuit Court of Appeals, however, has rejected this argument. Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

In *Butler v. Curry*, the Ninth Circuit found that a September 28, 2005 opinion of the California Court of Appeal, which denied relief on a Sixth Amendment claim based entirely on the reasoning of *People v. Black*, 35 Cal.4th 1238 (2005), was contrary to clearly established Supreme Court precedent. In *Black*, the California Supreme Court found that the imposition of an upper term did not violate a defendant's right to a jury trial under the principles set forth in *Apprendi*, *Blakely*,

and *Booker* because the upper term was the statutory maximum and because California's determinate sentencing law only authorized courts to engage in the type of factfinding that traditionally had been incident to a judge's selection of an appropriate sentence. People v. Black, 35 Cal.4th 1238, 1254 (2005). The Ninth Circuit in *Butler* found that the rule applied in *Black* was contrary to established federal law as it was "nowhere to be found in Supreme Court precedent." Butler v. Curry, 528 F.3d 624, 640 (9th Cir. 2008).

Here, the last reasoned state court adjudication of Petitioner's claim is the June 8, 2005 opinion of the Court of Appeal, which was issued only twelve days before the California Supreme Court's decision in *Black*. In denying Petitioner's claim, the Court of Appeal relied on the same reasoning set forth in *Black*, which the Ninth Circuit found to be contrary to established Supreme Court precedent at the time. Accordingly, in this case, the Court of Appeal's opinion was contrary to established Supreme Court precedent. This Court must therefore review the substantive constitutionality of Petitioner's claim de novo. Frantz v. Hazey, 2008 WL 2600143, *9 (9th Cir. 2008) (stating that, once a federal habeas court concludes that § 2254(d)(1) is satisfied, it must review the substantive constitutionality of the state custody de novo).

While the imposition of an upper term based on aggravating factors not found by the jury generally violates the Sixth Amendment, the Supreme Court has retained an exception for findings of a defendant's prior convictions. Cunningham v. California, 127 S.Ct. 856, 868 (2007); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Further, "under California law, only one aggravating factor is necessary to set the upper term as the maximum sentence." Butler v. Curry, 528 F.3d 624, 643 (9th Cir. 2008). For that reason, if at least one of the aggravating factors on which the judge relied in sentencing was established in a manner consistent with the Sixth Amendment, the sentence does not violate the Constitution. Id.

At Petitioner's sentencing hearing, the court announced that it had received, read, and considered the report and recommendation of the probation officer. (RT at 1415.) That report noted that Petitioner had prior convictions for second degree burglary and grand theft. (CT at 322.) The report listed as circumstances in aggravation 1) the crime involved violence or other facts disclosing a high degree of cruelty, viciousness, or callousness; 2) the manner in which the crime was carried

out indicated planning, sophistication, or professionalism; 3) the defendant engaged in violent conduct indicating serious danger to society; 4) the defendant's prior convictions were numerous or of increasing seriousness; 5) the defendant was on probation or parole when the crime was committed; and 6) the defendant's prior performance on probation or parole was unsatisfactory. (CT at 323.)

In sentencing Petitioner, the court initially stated that, even if Petitioner was eligible for probation, it would find him unsuitable due to his prior criminal history, the seriousness of the instant offense, and the fact he was on probation at the time of the instant offense. (RT at 1425.) The court then disagreed that the facts showed the crime involved planning, sophistication, or professionalism and found as a mitigating circumstance that the victim had initiated the incident. (RT at 1425-26.) The court, however, in choosing upper terms, found that the aggravating circumstances outweighed the mitigating circumstances. (RT at 1426-27.)

The court's sentence did not violate Petitioner's Sixth Amendment rights because the court sentenced him only after noting his prior criminal history and finding that the aggravating factors, which included Petitioner's prior convictions, outweighed the mitigating factors. The finding regarding the prior convictions was sufficient on its own to authorize the imposition of upper terms. See Butler v. Curry, 528 F.3d 624, 643 (9th Cir. 2008); see also Cal. Rules of Court, Rule 4.420(b) (stating that the judge may properly consider all relevant factors in selecting the appropriate prison term); Cal. Rules of Court, Rule 4.408(a) (stating that the judge may properly consider unenumerated criteria when making discretionary sentencing decisions). The fact that the court may have also considered other factors not falling within the prior conviction exception does not affect the analysis. See Butler, 528 F.3d at 648-49 ("[T]he relevant question [regarding a Sixth Amendment sentencing violation] is not what the trial court would have done, but what it legally could have done. After one aggravating factor was validly found, the trial court legally could have imposed the upper term sentence. That the judge might not have done so in the absence of an additional factor does not implicate the Sixth Amendment, as that consideration concerns only the imposition of a sentence within an authorized statutory range.").

**D.  Ground Four**

Petitioner argues that his due process rights and rights to present a defense and confront witnesses were violated when the trial court excluded evidence regarding the victim's prior violent acts.

This claim was raised in an appeal to the California Court of Appeal, which affirmed the judgment on June 8, 2005.  (Lodged Docs. 1-2.)  The issue was then raised in an appeal to the California Supreme Court, which summarily denied review.  (Lodged Docs. 3-4.)  The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner's constitutional arguments regarding the excluded evidence were not cognizable on appeal because defense counsel did not make the arguments in the trial court.  (Lodged Doc. 2 at 5.)

A federal court will not review claims in a petition for writ of habeas corpus if the state court has denied relief on those claims on a state law ground that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  This doctrine of procedural default is based on the concerns of comity and federalism.  Id. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.  Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice."  Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

Here, citing to People v. Rodrigues, 8 Cal.4th 1060, 1116 n.20 (1994) and People v. Ashmus, 54 Cal.3d 932, 972-73 n.10 (1991), the California Court of Appeal found that Petitioner's claims

were not cognizable because defense counsel did not make the arguments at trial. (Lodged Doc. 2 at 5.) In the cited cases, the California Supreme Court stated that issues will not be reviewed on appeal absent a specific and timely objection in the trial court. People v. Rodrigues, 8 Cal.4th 1060, 1116 n.20 (1994); People v. Ashmus, 54 Cal.3d 932, 972-73 n.10 (1991).

The contemporaneous objection rule is independent of federal law and adequate to support the judgment. See Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999) (finding claim procedurally defaulted where defendant failed to timely object at trial); Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995) (finding claim procedurally barred where defendant failed to object at trial). Petitioner's claims are therefore procedurally defaulted unless he can demonstrate cause for the default and actual prejudice or that the failure to consider his claims will result in a fundamental miscarriage of justice.

Cause and Prejudice

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of sufficient causes include a showing that the factual or legal basis for a claim was not reasonably available to counsel, that interference by officials made compliance impracticable, and that counsel provided ineffective assistance. Cook v. Schriro, 516 F.3d 802, 828 (9th Cir. 2008). However, "a claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Farrar v. Thompson, 116 Fed.Appx. 811, 813 (9th Cir. 2004).

Here, Petitioner has not shown any external factor that prevented counsel from putting forth Petitioner's constitutional claims in the trial court. Further, Petitioner cannot establish cause for the default based on ineffective assistance as he did not present an independent claim of ineffective assistance to the state courts. Accordingly, his claims are procedurally defaulted unless he can show that the failure to consider them would result in a fundamental miscarriage of justice.

Fundamental Miscarriage of Justice

To demonstrate a fundamental miscarriage of justice, Petitioner must show "that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." Cook v. Schriro, 516 F.3d 802, 829 (9th Cir. 2008)  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Id.

Petitioner does not argue, and he has not shown, that failing to consider his claims would result in a fundamental miscarriage of justice.  His claims are therefore procedurally defaulted.

**E.  Ground Five**

Petitioner argues that his due process rights and rights to present a defense and confront witnesses were violated when the trial court improperly instructed the jury regarding acting in the defense of another.  Petitioner claims that the jury was incorrectly instructed that the right to act in defense of another was not available if Petitioner was the initial aggressor or had engaged in mutual combat.  Petitioner further claims that the trial court failed to properly modify the instructions to inform the jury that a person could act in defense of another to the extent that the other person could act in self-defense.

These claims were raised in an appeal to the California Court of Appeal, which affirmed the judgment on June 8, 2005.  (Lodged Docs. 1-2.)  The issues were then raised in an appeal to the California Supreme Court, which summarily denied review.  (Lodged Docs. 3-4.)  The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that any instructional error was harmless because the concepts of mutual combat and initiating aggression were inapplicable to the defense of others theory that was presented at trial.  (Lodged Doc. 2 at 13.)

To obtain federal habeas relief on the basis of an incorrect jury instruction, a petitioner must show more than that the instruction was undesirable, erroneous, or even universally condemned; the

question is whether the instruction by itself so infected the entire trial that the resulting conviction violated due process. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Id. Further, habeas relief based on trial error is only available if the error had "substantial and injurious effect or influence in determining the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 145 (1998); see also Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005) ("To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was 'contrary to' or an 'unreasonable application' of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error.").

Here, the jury was instructed on defense of another in part as follows:

> Homicide is justifiable and not unlawful when committed by a person in the defense of another. If he actually and reasonably believed that the individual killed intended to commit a forcible and atrocious crime and there was imminent danger of that crime being accomplished. A person may act upon appearances, whether the danger is real or merely apparent.
>
> . . .
>
> The reasonable ground of apprehension does not require actual danger, but it does require, one, that the person about to kill another must be confronted with the appearance of a peril as has been mentioned; two, that the appearance of peril raise in his mind an actual belief and fear of that peril; three, that a reasonable person in the same situation seeing and knowing the same facts would justifiably have, and be justified in having the same fear; and four, that the killing be done under the influence of that fear alone.
>
> . . .
>
> Upon a trial of a charge of murder, a killing is lawful if it was justifiable. The burden is on the prosecution to prove beyond a reasonable doubt that the homicide is unlawful, that is, not justifiable. If you have a reasonable doubt that the homicide is unlawful, you must find the defendant not guilty.

(RT at 1048-49.)

The court then gave the following instructions, which are the instructions being challenged by Petitioner:

> The right of defense of others or [sic] is only available to a person [who] initiated an assault if he's done all the following: One, he has actually tried, in good faith, to refuse to continue fighting; two, he has clearly informed his opponent by words or conduct he wants to stop fighting; and three, has clearly informed his opponent, by word or conduct he has stopped fighting. After he has done these three things, he has the right to defense of others if his opponent continues to fight.
>
> The right to defense of others is not available [to] a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising the defense of others.
>
> The right of defense of others is only [available] to a person who engaged in mutual combat in light of all the following: One, he has actually tried in good faith to continue [sic] fighting; two, he has clearly informed his opponent by words or conduct he wants to stop fighting; three, he has clearly informed his opponent by words or conduct he has stopped fighting; and four, he has given his opponent the opportunity to stop fighting. After he has done these four things, he has the right to defense of others if his opponent continues to fight.

(RT at 1050-51.)

Petitioner's claim, to the extent he argues that the instructions were incorrect under state law, is not cognizable in a federal habeas proceeding. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Further, Petitioner has not shown that the challenged instructions had a substantial and injurious effect on the verdict, as he has failed to identify any testimony or evidence showing a likelihood that the jury rejected his defense of others claim because he personally initiated an assault on the victim, or engaged in mutual combat, but failed to properly attempt to stop fighting.

Petitioner has also not shown that the failure to give other specific instructions had a substantial and injurious effect on the outcome. Petitioner argues that the jury should have been instructed that he was permitted to act in defense of his sister to the extent she could act in self-defense and that an initial aggressor or mutual combatant has the right to act in self-defense under certain circumstances as recognized in *People v. Quach*, 116 Cal.App.4th 294 (2004). (Traverse at 23-24.) The court in *Quach* recognized that self-defense is available to an initial aggressor or mutual combatant if the victim responds with a sudden and deadly counterassault that is excessive under the circumstances. People v. Quach, 116 Cal.App.4th 294, 301-02 (2004); CALJIC 5.54, ¶ 2; CALJIC 5.56, ¶ 2. Here, Petitioner's sister testified that she slapped the victim while the victim was sitting in her car and that the victim then backed her car up a few inches and came forward while Petitioner's sister was standing by the driver's side door. (RT at 547-48.) Petitioner's sister further testified that

the victim then began backing the car into the street and that she was standing beside the rear driver's side door of the victim's car when Petitioner began shooting. (RT at 548-51.) Even if the trial court had instructed the jury as sought by Petitioner, it was unlikely to affect the verdict because the evidence did not show that the victim responded to the actions of Petitioner's sister with a sudden and deadly counterassault that would justify the use of deadly force in response or that Petitioner's sister was otherwise threatened with imminent harm.

### IV.  Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;
2. The Clerk of Court is DIRECTED to enter judgment; and
3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   August 15, 2008**              /s/ John M. Dixon
                                          UNITED STATES MAGISTRATE JUDGE